SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff,
JAIMIE MANNS and
N.M., by and through his
guardian ad litem, Jaimie Manns

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JAIMIE MANNS, an individual; N.M., a minor, by and through his guardian ad litem, Jaimie Manns;

  Plaintiffs,

  vs.

COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY CHILD AND FAMILY SERVICES; ALEJANDRA GONZALEZ, an individual; MALLORY FLORES, an individual; KRISTINA DODELE; MEGAN FONSECA, an individual; DOES 1 through 10, inclusive;

  Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

(1) VIOLATION OF 42 U.S.C. SECTION 1983;
(2) VIOLATION OF 42 U.S.C. SECTION 1983 – *MONELL* CLAIM;
(3) VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1;
(4) BREACH OF MANDATORY DUTIES;
(5) VIOLATION OF PENAL CODE SECTION 11166
(6) VIOLATION OF PENAL CODE SECTION 273(a) AND (b);
(7) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
(8) BREACH OF FIDUCIARY DUTY;
(9) NEGLIGENCE;
(10) BREACH OF DUTY OF CARE ARISING UNDER A SPECIAL RELATIONSHIP

**JURY TRIAL DEMANDED**

Plaintiffs N.M., by and through his guardian ad litem Jaimie Manns, and JAIMIE MANNS in her individual capacity ("Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked under 28 U.S.C. 1331 in this action under 31 U.S.C. Section 3730(h). Pursuant to 28 U.S.C. Section 1367, this Court has supplemental jurisdiction over the subject matter of the Plaintiff's state law claims on the grounds that these claims are so related to the claims within this Court's original jurisdiction that they form the same case or controversy under Article III of the United States Constitution.

2.      Venue of this action is proper in this judicial district by virtue of 28 U.S.C. Section 1391 because, among other things, the acts complained of occurred in this judicial district and because one or more of the Defendants reside in this judicial district and all of the Defendants reside in California.

## PARTIES

3.      Plaintiff Jaimie Manns ("MS. MANNS") was at all times relevant herein, a lawful resident of San Bernardino County. All of the tortuous conduct of Defendants that is complained of herein and which gives rise to the causes of action stated herein took place in San Bernardino County. MS. MANNS is the mother of N.M., a minor.

4.      Plaintiff N.M. ("N.M.") was at all times relevant herein a minor and a lawful resident of San Bernardino County. N.M. is represented in this action by his biological mother and guardian ad litem, Jaimie Manns.

5.      Defendant San Bernardino County Child and Family Services ("DCFS" or "CFS") was and is a public agency ran by Defendant County of San Bernardino ("COSB" or "COUNTY" ) in San Bernardino, California.

6.      Plaintiffs are informed and believe that Defendant ALEJANDRA GONZALEZ ("GONZALEZ") is and at all times mentioned was a children's social worker for San Bernardino County Family and Child Services in San Bernardino, California.

7.     Plaintiffs are informed and believe that Defendant KRISTINA DODELE
("DODELE") is and at all times mentioned was a children's social worker for San
Bernardino County Family and Child Services in San Bernardino, California.

8.     Plaintiffs are informed and believe that Defendant MALLORY FLORES
("FLORES") is and at all times mentioned was a children's social worker for San
Bernardino County Family and Child Services in San Bernardino, California.

9.     Plaintiffs are informed and believe that Defendant MEGAN FONSECA
("FONSECA") is and at all times mentioned was a children's social worker for San
Bernardino County Family and Child Services in San Bernardino, California.

10.     FONSECA, GONZALEZ, FLORES, DODELE, and DOES 1 through 10,
inclusive, are sometimes hereinafter referred to as "INDIVIDUAL DEFENDANTS."

11.     The true names and/or capacities, whether individual, corporate, associate or
otherwise, or defendants DOES 1 through 10, inclusive, and each of them, are unknown
to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiffs are
informed and believe, and upon such information and belief allege, that each of the
Defendants fictitiously named herein as a Doe is legally responsible, negligently, or in
some actionable manner, for the events and happenings hereinafter referred to, and
proximately caused the injuries and damages to Plaintiff hereinafter alleged. Plaintiffs
will seek leave of Court to amend this Complaint to assert the true names and/or
capacities of such fictitiously named Defendants when the same have been ascertained.

12.     Plaintiffs are informed and believe, and thereon allege, that at all times
mentioned herein, Defendants, and each of them, including DOES 1 through 10, are
individually and/or jointly liable in some manner for the wrongs alleged herein, and/or
were the agents, servants, and/or co-conspirators of their Co-Defendants, and were, as
such, acting in concert, and that each and every Defendant, as aforesaid, when acting as
an individual and in concert, perpetrated the negligent and reckless acts herein alleged
and is responsible for the events and happenings herein set forth and proximately caused
injury to the Plaintiffs as herein alleged.

13.    Plaintiffs allege that Defendants were associated with the implementation of program to protect minors subject to the jurisdiction or the Juvenile Court of the County of San Bernardino.  Plaintiffs allege that Defendants have mandatory duties to implement policies and programs designed, among other things, to protect the legal and human rights of children receiving services from relative placements to ensure that the placements present with and maintain adequacy and safe living arrangements free from abuse and neglect.

## FACTUAL ALLEGATIONS

14.    Plaintiff JAIMIE MANNS was in a relationship with Andrew Guiffrida ("Guiffrida") until February 8, 2019. MS. MANNS separated from Guiffrida after an incident where Guiffrida committed acts of domestic violence upon MS. MANNS, slamming her against a wall while she was six (6) months pregnant. Guiffrida committed domestic violence upon MS. MANNS in front of her other young children and mother. Guiffrida committed domestic violence upon MS. MANNS when she expressed concern to Guiffrida because he continuously drove under the influence of alcohol with his minor child from another relationship in the vehicle.

15.    The family law court file documents Guiffrida's history of domestic violence and multiple acts of verbal and physical abusive upon MS. MANNS during their relationship. (*Andrew Guiffrida v. Jaimie Manns,* San Bernardino Superior Court, Case No. FAMSS1901658, "Family Law Court" or "Family Law Case").

16.    On February 14, 2019, Guiffrida filed paperwork in family law court to establish his paternity over MS. MANNS' unborn child.

17.    Plaintiff N.M. ("N.M.") was born on April 19, 2019. Guiffrida's name did not appear on N.M.'s birth certificate.

18.    On May 21, 2019, MS. MANNS notified the family law court regarding Guiffrida's record of domestic violence effecting his ability to visit N.M. The San Bernardino Family Law Court entered a Stipulated Temporary Order allowing Guiffrida **supervised visits** with N.M. **for two hours per day, two days per week**. Between

August, 2019, and October, 2019, Guiffrida failed to attend over 25% of his scheduled visits.   The family law court ordered a **98% physical custody time share of N.M. to MS. MANNS.** (*Andrew Guiffrida v. Jaimie Manns*, San Bernardino Superior Court, Case No. FAMSS1901658).

19.    On October 24, 2019, during a visit with N.M., Guiffrida and his paternal grandmother took N.M. to a park. When MS. MANNS returned to pick N.M. up, she noticed that he "seemed out of it" and was "fussy" when placed in his car seat. N.M. fell asleep shortly after. Photographs from this visit reveal that Guiffrida placed N.M. on an elevated concrete picnic table doing "tummy time."

20.    Upon information and belief, N.M. sustained an injury on October 24, 2019 while in the care of Guiffrida.

21.    On October 25, 2019, MS. MANNS brought N.M. to an appointment with Dr. Steve Kwon for his vaccinations.  Guiffrida attended this visit. While in the waiting room, Guiffrida became angry, demanding, yelled and was verbally abusive with Dr. Kwon's staff. The Anaheim Police Department arrived and escorted Guiffrida out of Dr. Kwon's office.  MS. MANNS' minor daughter, who had been present for previous acts of abuse by Guiffrida against MS. MANNS, and who had accompanied MS. MANNS to N.M.'s appointment, told MS. MANNS that Guiffrida's presence caused her great anxiety and distress.

22.    During the appointment with Dr. Kwon, MS. MANNS observed black-bluish bruises on N.M., and expressed her concern about said bruises to Dr. Kwon. Dr. Kwon advised MS. MANNS to take N.M. to the Children's Hospital of Orange County. ("CHOC").

23.    MS. MANNS took N.M. to CHOC, whereby he spent approximately nine (9) hours where he underwent a full evaluation. CHOC administered a full body x-ray to N.M. to determine whether he had a fracture in his right leg. Later CHOC determined that N.M. had no fracture in his right leg.

///

24.    On October 26, 2019, at approximately 1:30 a.m., MS. MANNS contacted the Chino Hills Police Department and filed a police report against Guiffrida identifying N.M.'s black and blue bruising. On the same day, CHOC Social Worker Kayla Wilson informed Defendant SAN BERNARDINO COUNTY CHILD AND FAMILY SERVICES ("DCFS") of N.M.'s visit to CHOC.

25.    On October 28, 2019, MS. MANNS attended family court and testified on the record in front of Judge Steven J. Singley, and notified the Court of Guiffrida's domestic violence, the black and blue bruising on N.M. during his visit with Guiffrida and DCFS notification. (San Bernardino Superior Court, Case No. FAMSS1901658, 10/28/19 Reporter's Transcript).

26.    On October 29, 2019, social worker ADRIANA SALAS ("SALAS") visited with MS. MANNS and N.M. This was the first time MS. MANNS was contacted by any person from DCFS since she filed the report four days earlier.  SALAS did not perform any physical inspection of N.M.'s body during this follow-up visit. SALAS directed MS. MANNS to proceed with Guiffrida's scheduled visit for that day.

27.    On October 31, 2019, MS. MANNS and N.M. returned to CHOC for a follow-up appointment. CHOC notified MS. MANNS that N.M.'s leg was not fractured.

28.    On the same day, October 31, 2019, SALAS called MS. MANNS and notified her that she had spoken with her supervisor, who was upset by how long it took for DCFS to respond to MS. MANNS' complaint. SALAS then directed MS. MANNS to interview with DCFS the following day. SALAS notified MS. MANNS that DCFS was concerned about Guiffrida continuing visits with N.M.

29.    On November 1, 2019, SALAS and her supervisor, ALEJANDRA GONZALEZ ("GONZALEZ"), along with Public Health Nurse DIANA KONING ("KONING") met with MS. MANNS. GONZALEZ repeatedly apologized for the delay in responding to MS. MANNS' report.

30.    On information and belief, on October 31, 2019, DCFS and the social workers were aware Andrew Guiffrida had a criminal history, whereby on April 16,

2012, the District Attorney charged Andrew Guiffrida with committing Penal Code
243(e)(1), domestic battery, and on December 11, 2012 the Court entered a Criminal
Protective Order (CLETS) against Guiffrida. (*People v. Andrew Guiffrida,* SBSC, Case
No. MWV1201520). On May 18, 2012, the Superior Court sent a certified copy of said
criminal charges to the State of California Respiratory Care Board regarding Guiffrida's
Respiratory License No. 30068. On December 11, 2012, the court entered a criminal
protective order stating Andrew Guiffrida cannot own or possess firearms until December
11, 2022.

31.    On information and belief, on October 31, 2019, DCFS and the social
workers were aware Andrew Guiffrida had a documented criminal history, including, on
January 1, 2012, Deputy A. McCoy of the San Bernardino Sheriffs Department Arrested
Mr. Guiffrida for the Charge of PC 243(e)(1) Domestic Battery Against Celida Garcia. In
the Police Report, Deputy McCoy stated, "[Celida's] Husband [Mr. Guiffrida] grabbed
her by both arms and pushed her forcefully into the closet where she was standing. He
held onto her arms and told her that she was not going to leave the house.  She told him
to let go and he did not…[Mr. Guiffrida] had been drinking…There was redness to both
bicep areas on her arms."  (See San Bernardino Sheriff's Dept.,  Pol. Rpt. No.
111200001). Mr. Guiffrida was interviewed by Deputy McCoy who stated that Mr.
Guiffrida "told [Celida] she was not allowed to leave because she was his wife. [Mr.
Guiffrida] states he grabbed her arms to stop her from leaving…he had been drinking had
changed his personality…"  (Id.).

32.    On information and belief, on October 31, 2019, DCFS and the social
workers were aware, as documented in the family law case file, that on August 16, 2019,
Mr. Guiffrida texted MS. MANNS, "I know I am an alcoholic [sic]… but Jaimie I'm
recovering… Yes I still enjoy a drink…I'm stressed… It helps…Yes im drinking but
that's now babe…over time I wont… im drinking to a new beginning!  I have a lot I need
to change…Yes I'm drinking … but at home with u control it…u need to let me be a
man.."  In response, MS. MANNS stated, "I've asked you not to drink but you continue

to do it….slow down the drinking. … I don't want to raise this baby with a man who
thinks hes an alcoholic…youre drunk… ive asked you not to drink but you continue to do
it… " On May 6, 2019, Mr. Guiffrida texted MS. MANNS, "Ur a great Mother! I
couldn't ask for a better one… I'm the ass whole and I will take it…Don't fuck me
over…So u will see how much I will fight…""I am going to make sure I get whats right
to me…am I going to have to fight for it?..."

33.     On information and belief, on October 31, 2019, DCFS and the social
workers were aware Samuel Guiffrida had a documented criminal history, including, on
May 22, 2007, the Court convicted Samuel Guiffrida of Penal Code § 647(f) Drunk in
Public. (*People v. Samuel Guiffrida*, San Bernardino Superior Court, Case No.
MWV701579).

34.     On information and belief, on October 31, 2019, DCFS and the social
workers were aware, as documented in the family law case file, that on February 8, 2019
Andrew Guiffrida forcefully elbowed and pushed MS. MANNS, while she was six
months pregnant, leaving red marks on her chest.

35.     On November 1, 2019, a DCFS social worker picked up N.M.. Upon
arrival, the social worker only had a booster seat, which cannot legally be used to
transport a baby, and had to borrow MS. MANNS' own car seat in order to safely
transport N.M.. Further, the social worker admitted to MS. MANNS that he did not know
how to install a car seat.   MS. MANNS provided the social worker with her relatives
contact information for placement for N.M., but the social worker refused to accept
names from MS. MANNS.

36.     DCFS and the social worker then arbitrarily decided that N.M. be formally
placed with Andrew Guiffrida's brother, Samuel Guiffrida.  At the time of N.M.'s
placement with Samuel Guiffrida, it was known or should have been known by
Defendants, that Samuel Guiffrida had a propensity for alcohol abuse and had a
propensity for violence that included prior related criminal charges and convictions. At
the time of N.M.'s placement with Samuel Guiffrida, it was known or should have been

known by Defendants, that Andrew Guiffrida, the biological father of N.M. and a frequent visitor to Samuel Guiffrida's home into which N.M. was being placed, had a propensity for alcohol abuse and had a propensity for violence that included prior related criminal charges for physical assault of a spouse or cohabitant and related convictions and an extensive family law court file documenting the same.

37.    Despite this continuing constructive and actual notice of the inappropriateness of Defendants' placement arrangement for N.M., Defendants allowed the inappropriate placement to be maintained.

38.    It was later revealed to MS. MANNS that Guiffrida was allowed to offer three different relatives for placement, despite the fact that family court had recently just ordered a 98% custody timeshare of N.M. to MS. MANNS.

39.    On November 2, 2019, MS. MANNS contact SALAS via telephone and email, but received no response. It was later revealed that DCFS unilaterally placed N.M with Andrew Guiffrida's relatives on November 2, 2019.

40.    On November 3, 2019, MS. MANNS sent an email to SALAS asking for an update on N.M. SALAS did not respond to this email.

41.    On November 4, 2019, MS. MANNS sent another email to SALAS asking for an update on N.M. SALAS failed to respond to this email.

42.    On November 4, 2019, after not hearing from SALAS, MS. MANNS called the Rancho Cucamonga office of DCFS and expressed concern over N.M.'s placement with a paternal relative that N.M. did not know. MS. MANNS spoke on the phone with supervisor MINNIE WILLIAMS ("WILLIAMS"). WILLIAMS refused to investigate.

43.    On November 6, 2019, the Dependency Court ordered DCFS to investigate any allegations and ordered that DCFS has full discretion to determine N.M.'s placement and visitation with MS. MANNS and Mr. Guiffrida. (*In the Matter of N.M.,* San Bernardino Superior Court, Juvenile Dependency Court, Case No. J-283043). On November 6, 2019, MS. MANNS was informed that DCFS unilaterally placed N.M. with Guiffrida's brother, Samuel Guiffrida ("SAM"), and his wife, Sara Guiffrida ("SARA").

44.    Between November 2019 and November 2020, DCFS failed to arrange any sibling visits by and between N.M. and his siblings.

45.    On November 8, 2019, MS. MANNS emailed SALAS to inform her of N.M.'s 6-month well-baby checkup, which was to include additional shots for N.M.. MS. MANNS requested that SALAS relay this information to SAM. On November 11, 2019, N.M.'s pediatrician informed MS. MANNS that N.M. was not brought to his 6-month well-baby appointment, and that N.M. was behind on his immunizations. MS. MANNS relayed this information to SALAS and requested assistance. SALAS refused to investigate.

46.    On November 12, 2019, MS. MANNS retained a dependency attorney who informed the Court that MS. MANNS' mother, Hamilda, would be an excellent placement option for N.M. because N.M. had already spent about 90% of his life around HAMILDA and was familiar with her. The Court agreed.

47.    On November 12, 2019, the Dependency Court ordered DCFS to investigate any allegations and ordered that DCFS has full discretion to determine N.M.'s placement and visitation with MS. MANNS and Guiffrida. (*In the Matter of N.M.,* San Bernardino Superior Court, Juvenile Dependency Court, Case No. J-283043).

48.    On November 12, 2019, DCFS determined that MS. MANNS was only entitled to a 2 hour supervised visit with N.M.. Hamilda completed the "live scan paperwork" and was informed that she would receive results in 2-5 days. On information and belief, no "live scan" was conducted on SAM or SARA, yet N.M. was placed in their care.

49.    On November 13, 2019, Hamilda contacted GONZALEZ and requested she be considered for placement of N.M. GONZALEZ informed Hamilda that she would not be considered for placement because N.M.'s current placement with SAM and SARA was appropriate. Hamilda notified GONZALEZ that N.M. had already missed a vital doctor appointment while with SAM Guiffrida and SARA and that SAM Guiffrida had a public intoxication criminal conviction, but GONZALEZ stated that DCFS had no

concern with N.M.'s placement with SAM Guiffrida and SARA. GONZALEZ stated that she will not investigate. GONZALEZ allowed N.M. to remain in the care of SAM and SARA despite having knowledge that such actions could lead to harm and physical abuse of N.M..

50. On November 15, 2019, GONZALEZ contacted MS. MANNS and stated that she will not reveal N.M.'s specific location to MS. MANNS. MS. MANNS notified GONZALEZ that N.M. was not safe in the presence of Guiffrida and his family and N.M. was not being properly fed because he had been exclusively breast feeding up until he was placed with Guiffrida's family. GONZALEZ notified MS. MANNS that DCFS had no concern with N.M.'s placement with Samuel Guiffrida and SARA. GONZALEZ notified MS. MANNS that she will not investigate Ms. MANNS' concerns. GONZALEZ allowed N.M. to remain in the care of SAM and SARA despite having knowledge that such actions could lead to harm and physical abuse of N.M..

51. On November 19, 2019, FLORES interviewed MS. MANNS at Court in the presence of MS. MANNS' attorney at the time (Arthur LaCilento) and County Counsel.

52. On November 21, 2019, Arthur LaCilento had MS. MANNS take a polygraph regarding whether MS. MANNS had committed any neglect or abuse relating to N.M.. The November 22, 2019 Polygraph Report, examiner Louis Rovner Ph.D., stated that "***Jaimie Manns passed her polygraph test…as such it is my professional opinion that MS. MANNS's written statement is completely true and accurate***" **and her results were conclusive and non-deceptive.** Mr. LaCilento notified DCFS of Ms. MANNS' polygraph results.

53. On November 26, 2019, MS. MANNS attended her supervised visit with N.H and she noticed that N.M. was covered in dog hair, had a large scratch on his left cheek, and had a severe rash with open and broken skin. November 26, 2019, MS. MANNS notified FLORES said concerns. FLORES refused to investigate. FLORES notified MS. MANNS that her only option was to call the DCFS child abuse complaint hotline, which sends Defendants an Emergency Response Referral Information

(hereinafter "ERRI" or "Referral" or "Hotline.") FLORES also **threatened** MS. MANNS not to call the DCFS child abuse complaint hotline and not to create an ERRI. MS. MANNS further questioned FLORES why Samuel Guiffrida was permitted to be N.M.'s caretaker, pointing out his previous criminal conviction. MS. MANNS requested FLORES provide a waiver, but FLORES declined to obtain a waiver. Upon information and belief, FLORES and DCFS failed to properly investigate MS. MANNS expressed concerns regarding N.M.'s welfare and safety. FLORES allowed N.M. to remain in the care of SAM and SARA despite having knowledge that N.M. was covered in dog hair, had a large scratch on his left cheek, and had a severe rash with open and broken skin and that such actions could lead to harm and physical abuse of N.M..

54.    On December 4, 2019, MS. MANNS met with FLORES at DCFS' office located in Fontana, California. MS. MANNS gave FLORES a binder which contained MS. MANNS' polygraph results and evidence MS. MANNS compiled regarding Guiffrida and his family's abuse and neglect of N.M.. FLORES notified MS. MANNS that FLORES and DCFS have a policy of not accepting polygraphs. FLORES notified MS. MANNS that FLORES had determined *on the spot* (without a review of the binder), that MS. MANNS had insufficient medical evidence regarding N.M.'s black and blue bruising.  Upon information and belief, FLORES and DCFS failed to properly investigate MS. MANNS expressed concerns regarding N.M.'s welfare and safety. FLORES allowed N.M. to remain in the care of SAM and SARA despite having knowledge that N.M. was covered in dog hair, had a large scratch on his left cheek, and had a severe rash with open and broken skin, that Ms. MANNS had passed a polygraph test and that Guiffrida's polygraph test was inconclusive and that such actions could lead to harm and physical abuse of N.M..

55.    On December 4, 2019, FLORES notified MS. MANNS that DCFS determined that her mother Hamilda **could no longer visit with** N.M.. No explanation was provided for this decision. During this time period, SARA notified DCFS that she did not want to continue caring for N.M. as she had 3 children and was pregnant.

Notations in DCFS records indicate that SARA asked why N.M. could not be cared for by Hamilda. Despite having knowledge that SARA did not want to continue to care for N.M. and that SARA believed Hamilda could care for N.M., FLORES allowed N.M. to remain in the care of SAM and SARA knowing that such actions could lead to harm and physical abuse of N.M..

56.     FLORES notified MS. MANNS that DCFS determined N.M. cannot be taken from the facility for supervised visitation with MS. MANNS. MS. MANNS provided FLORES with MS. MANNS' aunt's information so that MS. MANNS could continue with her supervised visits. Despite having knowledge that Ms. MANNS had passed a polygraph test related to the original incident and that Guiffrida's polygraph test was inconclusive, MS. MANNS was mandated to supervised limited visits while Guiffrida had not such restrictions. FLORES knew or should have known that her actions could lead to harm and physical abuse of N.M..

57.     On December 13, 2019, MS. MANNS received a phone call from KRISTINA DODELE ("DODELE"), a new social worker on MS. MANNS' case. MS. MANNS informed DODELE that she would like more visitation with N.M..

58.     On December 18, 2019, MS. MANNS, along with her parents, sister, brother-in-law, uncle, aunt, and best friend WILL GUILLEN attended a family team meeting regarding N.M.'s placement. Andrew Guiffrida was present with his parents, ex-wife CELIDA GARCIA, Samuel Guiffrida, SARA, and his other brothers. Additionally, FLORES and her supervisor ALEIDA MURCIA ("MURCIA") were present. Notably, DODELE was not present, and replaced by IAN FRANCO ("FRANCO"). On information and belief, FRANCO had a prior existing relationship with Samuel Guiffrida, of which DCFS was aware at the time. This constituted a conflict of interest, for which DCFS and FRANCO failed to remedy.

59.     During the December 18, 2019, family meeting, MS. MANNS notified DCFS and social workers at the meeting of Guiffrida's criminal history, domestic violence past, anger management problems, violent tendencies and admitted alcoholism.

At the meeting, Andrew Guiffrida and Samuel Guiffrida violently yelled at MS. MANNS
throughout the meeting and told her to shut up in an attempt to intimidate her. DCFS
witnessed this abusive and outrageous behavior by Andrew Guiffrida and SAM and
failed to intervene and stop the confrontation.  On information and belief, DCFS having
this knowledge and witnessing the abusive nature of both Andrew Guiffrida and SAM,
failed to properly investigate said allegations.

60.     On December 20, 2019, MURCIA and FRANCO inspected MS. MANNS'
apartment.

61.     On December 26, 2019, MS. MANNS traveled to the Rancho Cucamonga
DCFS office to attend a prearranged meeting with Parent Partner JUDY WEIDNER
("WEIDNER") to discuss her concerns regarding N.M. safety. WEIDNER failed to show
up for the meeting. On December 27, 2019, MS. MANNS contacted WEIDNER and
notified her of additional allegations of Guiffrida's acts of domestic violence and criminal
history. WEIDNER notified MS. MANNS that she needs to "*forget about*" Guiffrida's
previous acts of domestic violence against her and her son because DCFS has determined
they are irrelevant to the safety of N.M. On information and belief, DCFS and
WEIDNER failed to properly investigate Ms. MANNS' allegations of abuse and neglect
regarding the safety of N.M..

62.     In early 2020, instead of reviewing Andrew Guiffrida's past history and
taking express action to protect the safety of N.M., COSB and DCFS granted Andrew
Guiffrida **unmonitored and extensive visitation** of N.M., and by doing, so put N.M.'s
health and safety in immediate danger.

63.     MS. MANNS discovered that Andrew Guiffrida was subjecting N.M. to
abuse and neglect, resulting in physical injuries to N.M.. MS. MANNS promptly
informed DEFENDANTS, of the imminent peril to N.M.. However, Defendants did not
take appropriate action to safeguard N.M. and continued to allow Andrew Guiffrida to
have unmonitored visits with N.M.. Ultimately, the actions of all of the named
///

Defendants can be described as both reckless and deliberately indifferent to the threats to N.M.'s safety.

64.    On January 8, 2020, at around 4:00 p.m., MS. MANNS was contacted by DEPUTY GARCIA from the San Bernardino Sheriffs Department. Thereafter, DEPUTY GARCIA contacted MS. MANNS and left a voicemail. MS. MANNS returned the deputy's call at around 6:30 p.m. the same day and left a voicemail.  On January 9, 2020, DODELE contacted MS. MANNS and accused her that she failed to contact DEPUTY GARCIA. MS. MANNS informed DODELE that she had left a voicemail for DEPUTY GARCIA the previous day.

65.    On January 9, 2020, MS. MANNS, her attorney, and DEPUTY GARCIA engaged in a telephone call. DEPUTY GARCIA questioned MS. MANNS about why she wanted her attorney on the line when MS. MANNS hadn't been charged with anything.

66.    On January 15, 2020, DODELE contacted MS. MANNS. MS. MANNS informed DODELE that Guiffrida was harassing MS. MANNS via the telephone. DODELE acknowledged that MS. MANNS was trying to co-parent. DODELE directed MS. MANNS to withhold information from Guiffrida regarding what she did with N.M. on her own time.

67.    On February 4, 2020, MS. MANNS met with DODELE and notified her of MS. MANNS completed services. DODELE notified MS. MANNS that she had done everything DCFS asked of her and stated that she would recommend MS. MANNS have overnight visits with N.M..

68.    On March 16, 2020, MS. MANNS and Guiffrida engaged in a mediation regarding custody of N.M.. No substantive agreement was reached at mediation.

69.    On April 15, 2020, DODELE notified MS. MANNS that DODELE and DCFS denied her request for overnight visits with N.M. and that DODELE and DCFS determined that N.M.'s visits with N.M. must be supervised. MS. MANNS notified DODELE that she had completed all of her DCFS requirements for unsupervised visits and FLORES had indicated no issues with unsupervised visits.

70.    On or about April 15, 2020 DCFS granted Guiffrida unsupervised, lengthy visits with N.M. At the time of N.M.'s placement, it was known or should have been know that Guiffrida had propensity for physical violence that included at least one prior criminal charge for physical assault of a spouse.

71.    On May 20, 2020, MS. MANNS notified DODELE that SARA refused to feed N.M. on all of MS. MANNS' visitation days. Upon information and belief, DODELE and DCFS refused to properly investigate MS. MANNS' allegations. SARA advised DCFS that she did not want to house and care for N.M. because she had four children and was overwhelmed.  DCFS ignored this request, refused to investigate and kept N.M. with SARA.

72.    At all times, MS. MANNS' mother and maternal grandmother Hamilda, was willing and capable of taking care of N.M.. DCFS had no justification for refusing to place N.M. with his maternal grandmother and leaving N.M in the care of SARA, who had advised DCFS that she did not want to care for N.M..

73.    On June 1, 2020, MS. MANNS notified social worker IWONA PENG ("PENG") that N.M. had a fever. PENG notified paternal grandmother KIM Guiffrida ("KIM") that MS. MANNS and PENG would take N.M. to urgent care the next day if they could not secure a doctors' appointment. KIM agreed to notify Guiffrida. MS. MANNS emailed SARA informing her of the fever and that MS. MANNS would be taking N.M. to the doctor the next day.

74.    On June 2, 2020, MS. MANNS took N.M. to urgent care for a possible UTI. The doctor found bruising on N.M.'s penis. MS. MANNS notified DODELE of the doctor visit and discovery of bruising on N.M.'s penis. On information and belief, DCFS and DODELE failed to properly investigate Ms. MANNS' allegations and concerns.

75.    On June 3, 2020, MS. MANNS again contacted DODELE and notified her that on June 2, 2020, the doctor found bruising on N.M.'s penis. On information and belief, DCFS and DODELE failed to properly investigate Ms. MANNS' allegations and concerns.

76.   On June 17, 2020, DCFS notified MS. MANNS that DCFS had decided to allow Guiffrida visitation with N.M. since March 20, 2020, and overnight visits with N.M. since April 10, 2020.

77.   On June 17, 2020, without justification, DCFS denied Ms. MANNS' request for unsupervised and/or overnight visits with N.M.  On June 17, 2020, DCFS decided to allow MS. MANNS to have only supervised visits with N.M at that time.

78.   On or about June 17, 2020 DCFS notified MS. MANNS that DCFS had sent N.M.'s case to the District Attorney, listing MS. MANNS as a suspect of neglect, but not Guiffrida due to his "inconclusive" polygraph result. At no point did DCFS acknowledge or take into account Ms. MANNS' own polygraph results. Further, MS. MANNS' progress report, that she had sent to FLORES was not considered, even though she was promised by DODELE that it would be considered.  The District Attorney rejected the DCFS against MS. MANNS.

79.   On or about June 17, 2020, FLORES submitted Guiffrida's progress report to the Dependency Court. On June 17, 2020 MS. MANNS requested FLORES and DCFS submit MS. MANNS' progress report to the Dependency Court, however, FLORES and DCFS refused.

80.   On June 28, 2020, Guiffrida informed MS. MANNS via text message that N.M. fell on June 24, 2020. MS. MANNS texted Guiffrida requesting status, and Guiffrida never responded.

81.   On June 29, 2020, MS. MANNS met with Guiffrida after his unsupervised visit with N.M.. MS. MANNS discovered and notified Guiffrida of unexplained black and blue bruising on both N.M.'s knees, both legs, right arm, and left side of hairline. MS. MANNS inquired of Guiffrida as to an explanation of N.M.'s injuries. Guiffrida remained silent. Guiffrida notified MS. MANNS that he did not take N.M. to the doctor regarding any of his injuries.  On June 29, 2020, MS. MANNS took multiple color photos of N.M.'s injuries, including THE unexplained black and blue bruising on both N.M.'s knees, both legs, right arm, and left side of hairline and sent them to DODELE and

notified DODELE of her concerns regarding N.M.'s safety. On information and belief,
DCFS and DODELE failed to conduct a proper investigation into MS. MANNS
communicated concerns regarding N.M.'s injuries.

82.   Despite MS. MANNS' numerous complaints to DCFS about the bruising on
N.M. after N.M. visited with Guiffrida, DSFS failed to investigate and continued to allow
N.M.'s unsupervised visits with Guiffrida.

83.   On July 2, 2020, Guiffrida texted MS. MANNS that N.M. was injured by a
tool box that fell while, in Guiffrida's care. Guiffrida sent MS. MANNS a photo of
N.M.'s left foot which showed three (3) more serious, open wounds.   On July 2, 2020,
MS. MANNS notified DODELE that N.M. was injured while in Guiffrida's care and sent
her photos of N.H.'s injuries. On information and belief, DCFS and DODELE failed to
conduct a proper investigation into MS. MANNS communicated concerns regarding
N.M.'s injuries. DCFS continued to allow Guiffrida unsupervised visits with N.M..

84.   On July 4, 2020, DCFS received an Emergency Response Referral
Information to its Child abuse complaint hotline, alleging emotional abuse, child abuse
and general neglect against Andrew Guiffrida;  the complaint alleged that N.M. incurred
severe injuries while in Guiffrida's care.

85.   On information and belief, DCFS failed to conduct a proper investigation
into the communicated concerns regarding N.M.'s injuries.  Despite DCFS receiving
numerous complaints of the bruises on N.M. while in Guiffrida's care, DCFS continued
to allow Guiffrida unsupervised visits with N.M..

86.   On July 5, 2020, PENG (an employee of the Chino Valley School District
and a mandatory reporter) filed a police report with the San Bernardino Sheriff's
Department regarding N.M.'s injuries and suspected neglect of N.M. while in Guiffrida's
care. (SBSD, Case No. 112007005).  The San Bernardino Sheriff Department notifed
DCFS of the Peng Police Report.

87.   On July 6, 2020, MS. MANNS met Guiffrida and N.M.'s paternal
grandfather at the IHOP located at 80 N. Euclid Ave, Upland, CA 91786 at 8:30 a.m. for

a visitation with N.M.. Both PENG and monitor FERNANDO GARCIA were present for the visit. MS. MANNS changed N.M.'s diaper and at this time noticed marks and black and blue bruises on N.M. that were not present during her last visit with N.M. on June 30, 2020. MS. MANNS photographed these new marks on N.M.'s neck and left arm. PENG and FERNANDO GARCIA witnessed the marks and black and blue bruising on N.M. at the time of the exchange.

88.    On July 8, 2020, MS. MANNS contacted ANNETTE SUSTIN ("SUSTIN"), who was DODELE's supervisor. MS. MANNS notified SUSTIN of the multiple injuries sustained by N.M. while in Guiffrida's care, as witnessed by PENG and FERNANDO. SUSTIN responded to MS. MANNS in an annoyed and irritated tone and notified MS. MANNS not worry about it and abruptly hung up the phone. On information and belief, DCFS and FONSECA failed to conduct a proper investigation into the communicated concerns regarding N.M.'s injuries.

89.    Despite DCFS receiving this and the other complaints of the bruises on N.M. while in Guiffrida's care, DCFS continued to allow Guiffrida unsupervised visits with N.M..

90.    On July 10, 2020, MS. MANNS contacted MEGAN FONSECA ("FONSECA") who informed her that N.M. visited a doctor. MS. MANNS requested documentation of the doctors' visit that FONSECA referenced, but FONSECA refused to provide MS. MANNS with any documentation. FONSECA threatened MS. MANNS that she would have to "get along" with Guiffrida.

91.    On information and belief, DCFS and FONSECA failed to conduct a proper investigation into the communicated concerns regarding N.M.'s injuries. Despite DCFS receiving this and the other complaints of the bruises on N.M. while in Guiffrida's care, DCFS continued to allow Guiffrida unsupervised visits with N.M..

92.    On July 17, 2020, MS. MANNS contacted ANNETTE SUTFIN and requested status on the safety of N.M. SUTFIN stated to MS. MANNS "…if you have further questions you can take it up with my manager…"

93.    On July 21, 2020, FLORES and DODELE contacted MS. MANNS and notified her that they discussed N.M.'s case with DCFS Manager TRACY REDMOND ("REDMOND"). FLORES and DODELE stated that after review of N.M.'s injuries, DCFS determined that N.M. would immediately be removed from Guiffrida's unsupervised care and that all of Guiffrida's future visits would take place at the DCFS Rancho Cucamonga office under DCFS supervision. On information and belief, FLORES, DODELE, REDMOND and DCFS failed carry through with their decision to immediately remove N.M. from GUIFRIDA's care, thus subjecting him to additional injuries, abuse and neglect.

94.    On July 23, 2020, DODELE notified MS. MANNS that DCFS has determined she could have supervised visits with N.M. on Mondays from 9:00 a.m. to 11:00 a.m. at the DCFS Rancho Cucamonga office. DODELE contacted MS. MANNS shortly thereafter and recanted and offered MS. MANNS' visits on Mondays from 1:00 p.m. to 3:00 p.m.

95.    On July 28, 2020, MS. MANNS again contacted DODELE to request a visit with N.M., since it had been one week since she had been allowed to visit her son. DODELE declined Ms. MANNS' request for a visit with N.M..

96.    Further, on July 28, 2020, there was a Court hearing in N.M.'s case, during which the Court granted discretion to DCFS to investigate the case and to make arrangements for visitation between N.M. and his parents.

97.    On August 4, 2020, MS. MANNS was allowed her first visit with N.M. at the Rancho Cucamonga DCFS office, which was supervised by ARMANDO MENDOZA ("MENDOZA").   Later the same day, MS. MANNS sent an email and text to DODELE requesting a visit with N.M., status of the case and recent medical information on N.M.  DODELE refused to respond.

98.    On August 7, 2020, MS. MANNS sent an email to DODELE and attached new pictures showing multiple black and blue bruises and cuts to N.M.'s arm, head, and legs that occurred while N.M. was in Guiffrida's care and requested an investigation. On

information and belief, DCFS and DODELE failed to conduct a proper investigation into the communicated concerns regarding N.M.'s injuries.

99.    On August 11, 2020, DODELE emailed MS. MANNS and FLORES and stated that N.M.'s new injuries are concerning.  Later, on August 11, 2020, FLORES separately contacted MS. MANNS regarding the email from DODELE. FLORES notified MS. MANNS that the new injuries suffered by N.M. occurred during a camping trip during which N.M. fell.  MS. MANNS stated concern over the fact that multiple different stories had been told regarding N.M.'s injuries by Guiffrida.  DCFS failed to investigate.

100.    On August 11, 2020, MS. MANNS contacted FLORES, and requested status on N.M.'s safety, and FLORES responded, "…So as of right now, we're keeping an eye on him…but if you feel still concerned, you can call the hotline and report whatever you're concerned about…"

101.    On August 18, 2020, MS. MANNS attended a supervised visited with N.M.. During this visit, FONSECA walked past the visitation room, which was monitored by social worker MENDOZA. FONSECA asked whether the visit was the "Manns visit," and, when MENDOZA replied affirmatively, FONSECA notified MENDOZA that she was the one who made the decision to remove N.M. from MS. MANNS' care.

102.    On August 13, 2020, MS. MANNS received a forensic report of N.M. from Dr. Jacobson. Dr. Jacobson opined that the injuries on N.M. were concerning based on placement, and that a recently-developed black eye suffered by N.M. was not consistent with a fall on the carpet, which Guiffrida had stated was the cause.

103.    Dr. Jacobson's August 13, 2021 report stated a different story from the one Guiffrida told DODELE regarding N.M.'s injuries. In the report, Guiffrida is quoted as saying that he did in fact see red marks on N.M.'s neck at the drop off on July 6, 2020. Previously, Guiffrida had stated that N.M. had no such marks.

104.    On September 1, 2020, after receiving N.M. from Guiffrida, MS. MANNS discovered new, black and blue bruising and injuries on N.M.'s back, arms, and head, including a black eye. At the child exchange, MS. MANNS documented the injuries and

emailed pictures of these injuries to DODELE.  DODELE instructed MS. MANNS to call the DCFS Child abuse complaint hotline and report the injuries. MS. MANNS followed DODELE's instructions and reported said injuries to the hotline. On information and belief, DCFS and DODELE failed to conduct a proper investigation into the communicated concerns regarding N.M.'s injuries. After all the complaints and evidence of bruising on N.M., DCFS allowed Guiffrida unsupervised visits with N.M..

105.   On September 3, 2020, MS. MANNS emailed DODELE and requested an update on N.M.'s injuries.  On September 15, 2020, MS. MANNS again emailed DODELE regarding status of her complaints of N.M.'s injuries.  DCFS failed to investigate.

106.   On September 15, 2020 MS. MANNS finally received a DCFS report which was riddled with errors stating that DCFS did not know of Guiffrida's criminal history and incorrectly named  N.M. as "Emma Ramirez."

107.   On September 16, 2020, MS. MANNS contacted DCFS, KATARINA KOLDE ("KOLDE"). MS. MANNS emailed KOLDE the photos of N.M.'s injuries.

108.   On October 20, 2020 MS. MANNS met with DODELE and notified her of her concerns regarding N.M.'s injuries sustained while in Guiffrida's care. DODELE notified MS. MANNS that she had cooperated fully with DCFS and completed everything asked of her and that DODELE had no concerns with N.M. remaining in MS. MANNS' care.

109.   On October 20, 2020, MS. MANNS emailed DODELE's supervisor ANNETTE SUTFIN ("SUTFIN") and manager TRACY RAYMOND ("RAYMOND") all of the corresponding texts, emails, and court reports regarding the injuries sustained by N.M., and requested status and requested the email to be forwarded to FONSECA's supervisor, LINA CLOUGH ("CLOUGH") and FLORES' supervisor, MINNIE WILLIAMS ("WILLIAMS").  On October 23, 2020, DODELE acknowledged receipt of MS. MANNS October 20, 2020 email and confirmed the email was forwarded to

///

CLOUGH and WILLIAMS. On information and belief, DCFS failed to conduct a proper
investigation into the communicated concerns regarding N.M.'s injuries.

110.   On November 9, 2020, MS. MANNS emailed FLORES to request an
update.

111.   On November 11, 2020, MS. MANNS again emailed DODELE and
FLORES to request further medical information for N.M..

112.   On November 12, 2020, MS. MANNS reached out again to DODELE
regarding the status her communicated concerns regarding N.M.'s injuries sustained
while in Guiffrida's care.

113.   On December 31, 2020, Guiffrida messaged MS. MANNS and informed her
that N.M. had suffered a burn and blistering from a hot dish that was placed on the
counter. However, later Guiffrida changed his story and notified DCFS and DODELE
that N.M. suffered a burn which occurred while Guiffrida was carrying N.M. and the hot
dish to the dinner table, and was unaware that the dish was touching N.M. the whole
time.  MS. MANNS requested that Guiffrida take N.M. to urgent care for the burn, but
Guiffrida refused.

114.   On January 4, 2021, during Ms. MANNS' next scheduled visit with N.M.,
she took N.M. to the Lodi Adventist Urgent Care in order to have a doctor look at the
burn N.M. suffered on December 31, 2020. The doctor indicated, upon seeing N.M.'s
injuries, that N.M.'s injuries arose from substantial neglect and that he appeared to have
suffered a second-degree burn.

115.   On January 6, 2021, MS. MANNS contacted DODELE and notified her that
the Lodi Doctor determined the second degree burns on N.M. were the result of
"substantial neglect" while N.M. was Guiffrida's care.  Additionally, MS. MANNS
notified DODELE that Guiffrida was allowing  his 13-year-old ex-step-son, who was and
is not biologically related to N.M., to share the same room as N.M. when he stayed with
Guiffrida. DODELE stated that this was an unacceptable thing to allow, as DCFS and its
///

agents were not aware of the boy's development, mental status, or how often he was left
alone with N.M..

116.    After all the complaints and evidences of bruising and neglect on N.M.,
DCFS continues to allow Guiffrida unsupervised visits with N.M..

117.    On information and belief, DCFS failed to conduct a proper investigation
into the communicated concerns regarding N.M.'s injuries.

118.    This action is brought by JAIMIE MANNS, as an individual and as the
guardian ad litem of N.M..

119.    On or about May 3, 2021, MS. MANNS timely filed Tort Claim Notices
under Government Code section 910 *et seq.* The Tort Claim was rejected on June 17,
2021.

120.    On July 15, 2021, a Central District Jury issued a verdict against DCFS for
$2.5 Million, declaring that San Bernardino *"...Children and Family Services [had] a*
*systematic failure in the operation, maintenance, and monitoring of the CMS database*
*that resulted in children being placed in the home of known abusers..."* (*Eric Bahra v.*
*County of San Bernardino,* USDC, CDCA, Case No. 5:16-cv-01756-JGB-SP, Jury
Verdict, Doc 168, October 14, 2021, emphasis added).

## FIRST CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C. SECTION 1983
### (By all PLAINIFFS Against the INDIVIDUAL DEFENDANTS, DOES 1 through
### 10)

121.    Plaintiffs incorporate by reference each and every allegation contained in the
foregoing paragraphs.

122.    Plaintiffs are informed and believe and thereon allege that once the state
assumes wardship or establishes dependency of a child, the state owes the child as part of
that person's protected liberty interest under the Fourteenth Amendment of the United
States Constitution, reasonable safety and minimally-adequate care. At all times
applicable herein, said liberty interest and duty of the state was "clearly established" such

that any reasonable social service practitioner, supervising social service practitioner or other persons jointly acting under color of state law would know that children, such as Plaintiff, should not be deprived of the right to live in situations where it is reasonably foreseeable that they would be exposed to abuse and/or neglect and/or harassment by individuals; that it is reasonably foreseeable that their civil and personal rights would be violated.

123.    Plaintiffs are further informed and believe and thereon allege that Defendants should have known that the placement of N.M. had a foreseeable risk of abuse and/or neglect and violations of civil and personal rights upon children and that Plaintiffs' personal and civil rights would foreseeably be violated. Yet despite this knowledge, Defendants intentionally or with a reckless disregard and deliberate indifference for the safety of Plaintiff N.M. placed and maintained N.M. in a situation where it was reasonably foreseeable that N.M. would be subjected to neglect, harassment and/or abuse and that his constitutional and personal rights would be violated; Defendants maintained N.M. in that placement despite actual and constructive knowledge of ongoing inability of the caregiver to provide Plaintiff with reasonable safety and minimally-adequate care.

124.    Plaintiffs allege that Defendants were acting under color or law when they breached their duties to Plaintiffs by placing and maintaining him in placement with persons known or who reasonably should have been known to demonstrate an inability to provide proper and adequate care and did so without proper justification or excuse.

125.    As described above, the INDIVIDUAL DEFENDANTS violated Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. INDIVIDUAL DEFENDANTS further violated MS. MANNS' rights and privileges under the Fourteenth Amendment to the United States Constitution. As described above, the INDIVIDUAL DEFENDANTS violated N.M.'s rights under the Fourteenth Amendment by failing to take reasonable steps to safeguard him from Guiffrida and

///

1 others after placing N.M. in great danger by giving Guiffrida and others unfettered access
2 to N.M..

3       126.   As a result of the INDIVIDUAL DEFENDANTS' conduct, Plaintiffs were
4 forced to endure great conscious pain and suffering as a result of the grossly negligent
5 and reckless care of N.M. by the INDIVIDUAL DEFENDANTS culminating in
6 significant physical injuries.

7       127.   As a result of the INDIVIDUAL DEFENDANTS' conduct, Defendants
8 deprived Ms. MANNS of her right to familial association with her son, N.M..

9       128.   As a direct result of these INDIVIDUAL DEFENDANTS' violations, and in
10 accordance with 42 U.S.C. § 1983, Plaintiffs' civil rights have been violated in that they
11 have suffered, and will continue to suffer economic and noneconomic damages, including
12 but not limited to grief, physical and/or mental anxiety and anguish; and in the matter, as
13 authorized by 42 U.S.C. § 1988 in an amount not yet ascertained, all of which shall be
14 shown according to proof at trial.

15       129.   INDIVIDUAL DEFENDANTS' wrongful conduct as herein alleged was
16 intentional, done with malice, and with conscious disregard for the rights of Plaintiffs
17 herein, and as a result of their despicable conduct, Plaintiffs are therefore entitled to
18 recover punitive damages from said INDIVIDUAL DEFENDANTS' wrongful acts for
19 the purposes of punishing said Defendants and to deter others from such conduct in the
20 future.

21       130.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs
22 have suffered and continue to suffer injuries as alleged herein including but not limited
23 to; pain; humiliation; anxiety; mental anguish; emotional distress, and other general and
24 special damages in an amount to be ascertained according to proof at trial. Plaintiffs
25 suffered general and special damages within the jurisdictional limits of this court and
26 seek them according to proof at trial. Plaintiffs have incurred attorneys' fees that they
27 will seek to recover pursuant to 42 U.S.C. section 1988.

28 ///

## SECOND CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. SECTION 1983 – *MONELL* CLAIM

## (By All PLAINTIFFS Against THE COUNTY OF SAN BERNARDINO and THE COUNTY OF SAN BERNARDINO DEPARTMENT OF CHILDREN AND FAMILY SERVICES)

131. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

132. Defendant COSB, including through its child welfare services agency the Department of Children and Family Services ("DCFS") is a "person" within the meaning of 42 U.S.C. § 1983 and subject to *Monell* liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiffs' rights.

133. Defendant COSB, including through its entity DCFS, and those individuals in their official capacities who had supervisory and/or policy making authority, had a duty to Plaintiffs at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter, referred to as "policy" or "policies") which provide the protections guaranteed Plaintiffs under the United States Constitution, including those under the Fourteenth Amendment, to include, without limitation, Plaintiffs' liberty interests in reasonable safety and minimally-adequate care, the protection of the right to be free of governmental deception, trickery, fabrication of evidence, and suppression, concealment or destruction of evidence in juvenile dependency and other proceedings; and the right to substantive and procedural due process. Said Defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within the the COSB and DCFS, so as to protect their constitutional rights; and to refrain from acting with the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected dependent children, including Plaintiffs herein.

///

134.    Defendant COSB, including through its entity DCFS, established and/or followed procedures, customs, and/or practices which were the moving force behind the violations of Plaintiffs' constitutional rights, including those under the Fourteenth Amendment, by but not limited to:

    a.  The custom and/or practice of placing dependent children with parents known or suspected to be physically and/or emotionally abusive and/or neglectful and/or associated with persons known or suspected to be physically and/or emotionally abusive and/or neglectful,

    b.  The custom and/or practice of maintaining dependent children in placement with parents known or suspected to be physically and/or · emotionally abusive and/or neglectful and/or associated with persons known or suspected to be physically and/or emotionally abusive and/or neglectful,

    c.  The custom and/or practice of placing dependent children with individuals who do not possess the training or experience to provide minimally adequate care and protection necessary to meet the needs of dependent children,

    d.  By acting with deliberate indifference in implementing a practice of inadequate training and/or supervision, and/or by failing to train and/or supervise its officials, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the placement of dependent children and the investigation and reporting of child neglect and abuse. (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available).

135.   Defendant COSB, including by and through its entity DCFS and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Defendants, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected children, including Plaintiffs herein.

136.   Defendants COSB and DCFS knew, or should have known, that by breaching the above mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiffs to be injured and damaged by COSB and DCFS' wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiffs, and that such policies were the moving force behind the violation of Plaintiffs' constitutional rights as alleged herein above.

137.   These actions, and/or inactions, of Defendant COSB were the moving force behind and direct and proximate cause of Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. Plaintiffs have incurred attorney's fees that they will seek to recover pursuant to 42 U.S.C. section 1988.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1

### (By All PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10)

138.   Plaintiffs incorporate, by reference herein, the allegations in the foregoing paragraphs as though fully set forth herein.

139.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under

1  Government Code § 815.2; and its conduct is not immunized by Government Code §
2  820.1.

3      140.  As a result of the conduct of Defendants, and DOES 1 through 10, inclusive,
4  as adopted and incorporated by paragraphs previously set forth herein, Defendants and
5  each of them have violated Plaintiffs' rights by interfering with Plaintiff's rights by
6  threats, intimidation, or coercion, or attempts thereto, including to force Plaintiff's to
7  conform to their demands, and in retaliation to Plaintiffs' exercise of their rights, causing
8  the violation and interference with the exercise and enjoyment of Plaintiff's rights
9  secured by the laws and Constitution of the United states and the laws and Constitution of
10 the State of California, including by using fabricated evidence, failure to disclose
11 exculpatory evidence, and testimony by duress, fraud, and undue influence in juvenile
12 dependency and investigation proceedings.

13     141.  As a direct and proximate result of the aforementioned conduct of
14 Defendants and each of them, Plaintiff has suffered and will continue to suffer damages,
15 including great emotional and psychological distress, humiliation, and mental anguish,
16 the nature and amount of which will be shown according to proof at trial.

17     142.  These violations of Plaintiff's rights by Defendants and DOES 1 through 10,
18 inclusive, and each of them, are guaranteed and protected by Civil Code § 52.1, entitling
19 Plaintiffs to damages and relief, statutory civil penalty and attorneys' fees, all of which
20 are requested herein.

21     143.  In doing the acts alleged in this Complaint, Defendants, and each of them,
22 knew or should have known that their actions were likely, or would, injure or damage
23 Plaintiffs and Plaintiffs are informed and believe, and thereon allege, that the
24 INDIVIDUAL DEFENDANTS, and each of them, intended to cause injury and damage
25 to Plaintiff, and/or acted with a willful and conscious disregard of Plaintiff's rights, thus
26 entitling Plaintiff to recover punitive damages as against said INDIVIDUAL
27 DEFENDANTS.
28 ///

# FOURTH CLAIM FOR RELIEF

## BREACH OF MANDATORY DUTIES

### (By all PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10)

144.   Plaintiffs incorporate, by reference herein, the allegations in the foregoing paragraphs as though fully set forth herein.

145.   Plaintiffs are informed and believe that the Defendants possessed mandatory duties which required them to, without limitation, investigate the complaints of abuse, not compel Plaintiff N.M. to reside with his abusers, and not to be deliberately indifferent to his medical and psychological needs.

146.   Plaintiffs allege on information and belief that Defendants violated mandatory duties including, but not limited to, those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures established pursuant to Welfare & Institutions Code § 16501 and as set forth in the San Bernardino Children and Family Services (CFS or DCFS) Handbook and the California Health and Safety Code. Plaintiff alleges that specific statutes, regulations and policies violated by Defendants include, but are not limited to, those requiring placement of Plaintiff N.M. with individuals trained and capable of meeting his needs and providing a safe environment not presenting a foreseeable risk of injury to Plaintiff N.M. as set forth in Regulations 31-401 through 31-445 of the CDSS Manual of Policies  and Procedures by failing to fulfill the social worker responsibilities for placement. Other statutes, regulations and policies violated include those set forth in Section 4 of the CFS Handbook pertaining to assessment and placement coordination to ensure the safety and well being of Plaintiff, to ensure the safety  and wellbeing of Plaintiff N.M.,  California Penal Code §§ 11166, et seq. by failing to report known and/or suspected neglect and/or abuse of Plaintiff: Regulations 31-320 and 31-330 of the CDSS Manual of Policies and Procedures by failing to adequately conduct face-to-face contacts with Plaintiff and the caregiver, Regulation 31-405 of the CDSS Manual of Policies and Procedures by failing to fulfill the social worker responsibilities for placement, Regulation 31-420 of the CDSS

Manual of Policies and Procedures by failing to adhere to placement responsibilities set forth therein, and Regulation 31-501 of the CDSS Manual of Policies and Procedures by failing to report and/or properly investigate reports of physical abuse or neglect of Plaintiff N.M. As described above, Defendants breached those duties.

147.   Plaintiffs allege that had Defendants breached their mandatory duties, they would have been required to act upon evidence of the inappropriateness of Plaintiff's placement and would have been obligated to take measures to protect Plaintiff N.M. or to remove Plaintiff from placement where he was subjected to abuse, neglect and/or mistreatment. Therefore, as a proximate result of Defendants' failure to fulfill their mandatory duties, Plaintiffs suffered neglect, abuse and/or mistreatment. Plaintiffs allege that Defendants assumed duties to oversee, monitor and regulate the conduct of their co-Defendants. Plaintiffs relied upon Defendants to fulfill these assumed duties, thereby establishing a special relationship between Plaintiffs and Defendants.  Plaintiffs further allege that Defendants have breached other statutory and common law duties by additional specific acts or omissions of which Plaintiffs are presently unaware and Plaintiffs will seek leave of the court to amend this Complaint when Plaintiffs discovers such acts or omissions or at time of trial.

148.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' and DOES 1 through 10, conduct under Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

149.   Plaintiffs are informed and believe that Defendants COSB, DCFS, GONZALEZ, DODELE, FONSECA and DOES 1 through 10 were made aware of GIUFFRIDA's violent tendencies, including violence and neglect towards N.M.. As a direct result of the acts and omissions of Defendants, Plaintiffs sustained general and special damages in amounts within the jurisdictional limits of this court according to proof at trial.

///

## **FIFTH CLAIM FOR RELIEF**

### **VIOLATION OF PENAL CODE SECTION 11166**

### **(By all PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10)**

150.   Plaintiffs incorporate, by reference herein, the allegations in the foregoing paragraphs as though fully set forth herein.

151.   Under the Child Abuse and Neglect Reporting Act, Defendants COSB, DCFS, GONZALEZ, DODELE, FONSECA, and DOES 1 through 10, by and through their employees and agents, were "child custodians" under a statutory duty to report known or suspected incidences of abuse of minors to a child protective agency, pursuant to California Penal Code § 11166. Pursuant to California Penal Code § 11165.7, a "mandated reporter" includes and is not limited to "[a]n administrator or employee of a public or private organization whose duties require direct contact and supervision of children;" and "[a]n employee of a child care institution, including but not limited to, foster parents, group home personnel, and personnel of residential care facilities."

152.   Defendants COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA and DOES 1 through 10 knew, suspected, or should have known or suspected in the exercise of reasonable diligence, that Guiffrida had abused, caused battery, harm, and other injuries to N.M., who was and is a minor, giving rise to a duty to report such conduct under § 11166 of the California Penal Code. Yet, COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA and DOES 1 through 10 failed to make such a report on a timely basis.

153.   By failing to report the continuing abuse known by Defendants, and each of them, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California Penal Code § 11166, Defendants created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act, and as a result, unreasonably and wrongfully exposed N.M. to the abuse as alleged herein, thereby breaching Defendants' duty of care.

///

154.   N.M. was and is one of the class of persons for whose protection California Penal Code §11166 was specifically adopted to protect.

155.   Had Defendants adequately performed their duties under § 11166 and reported the abuse of N.M. on a timely basis, the report would have resulted in the involvement of case workers to remove N.M. from his abuser's home, and prevent further harm to N.M.

156.   As a proximate result of COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA and DOES 1 through 10 to timely follow the mandatory reporting requirements of § 11166, and separately, as a result of DOES' 1 through 10, inclusive, failure in the same regard, N.M. was wrongfully denied, and restricted from receiving, the protection of child protection agencies. These agencies would have changed the then-existing arrangements and conditions that provided Guiffrida the access and opportunity to abuse N.M.

157.   The physical, mental, and emotional damages and injuries resulting from the heinous acts of abuse against N.M. alleged herein, were the types of occurrences and injuries the Child Abuse and Neglect Reporting Act were designed to prevent.

158.   As a direct result of the wrongful conduct alleged herein, Plaintiffs has suffered and continues to suffer, among other things, great pain of mind and body, shock, emotional distress, physical, cognitive and behavior manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and continues to sustain loss of future earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

159.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under

///

Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

160.   The decisions, acts, and inactions by GONZALEZ, DODELE, FLORES, FONSECA, and DOES 1 through 10 constituted malice, along with willful and conscious disregard, for the rights and safety of N.M.. As such, Plaintiff is entitled to recover punitive damages from all INDIVDIUAL DEFENDANTS in an amount according to proof.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF PENAL CODE SECTION 273(a) AND (b)

### (By All PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10 )

161.   Plaintiffs incorporate, by reference herein, the allegations in the foregoing paragraphs as though fully set forth herein.

162.   Under circumstances or conditions likely to produce great bodily harm or death, COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA, and DOES 1 through 10, inclusive, willfully caused or permitted the person or health of N.M. to be injured, or willfully caused or permitted N.M. to be placed in a situation where N.M. person or health were endangered, in violation of California Penal Code § 273(a)-(b).

163.   N.M. was within the class of persons to be protected by Penal Code § 273(a)-(b).

164.   As a direct result of the wrongful conduct alleged herein, N.M. suffered, among other things, great pain of mind and body, shock, emotional distress, physical, cognitive, and behavioral manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; he has suffered spiritually, and was prevented from performing daily activities and obtaining the full enjoyment of life; and has incurred  expenses for medical and psychological treatment, therapy and counseling.

165.   As a direct result of the wrongful conduct alleged herein, MS. MANNS suffered, among other things, great pain, shock, emotional distress and behavioral

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; she has suffered spiritually, and was prevented from performing daily activities and obtaining the full enjoyment of life; she has sustained loss of future earning capacity; and has incurred  expenses for medical and psychological treatment, therapy and counseling.

166.   The decisions, acts, and inactions by COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA, and DOES 1 through 10, inclusive, constituted negligence and, further, constituted malice. Further, the decisions, acts, and inactions by COSB, DCFS, GONZALEZ, DODELE, FLORES, FONSECA, and DOES 1 through 10 constituted a willful and conscious disregard by Defendants and DOES 1 through 10, inclusive, for the rights and safety of N.M..

167.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

168.   Plaintiffs are informed and believe, and based thereon allege, that DEFENDANTS and DOES 1 through 10, inclusive, and their managing agents, officers, and/or directors, authorized, adopted or ratified the wrongful and unlawful conduct of their employees, subcontractors, and agents and/or are personally guilty of oppression, fraud or malice. As such, Plaintiffs are entitled to recover punitive damages from all INDIVIDUAL DEFENDANTS in an amount according to proof.

## SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (By All PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10)

169.   Plaintiffs incorporate, by reference herein, the allegations in the foregoing paragraphs as though fully set forth herein.

170.   All DEFENDANTS, and DOES 1 through 10, inclusive, engaged in the aforenoted outrageous, unprivileged conduct as set forth herein, including but not limited

to; retaliating against Plaintiff JAIMIE MANNS, preventing Plaintiff JAIMIE MANNS from exercising her familial rights as a parent; providing the Court with false information in a warrant to remove the minor child from his mother's care, custody, and control; by unlawfully and wrongfully removing and detaining N.M.; by investigating and questioning Plaintiff JAIMIE MANNS with intimidation, coercion, and duress; by maliciously withholding exculpatory evidence; by falsely and maliciously alleging and reporting that the physical health and safety of N.M. were threatened by his mother; and by failing to provide evidence and information which would negate removal and detention of N.M., including when properly and reasonably requested.

171.    These DEFENDANTS intended to cause, or acted in reckless disregard of causing, physical and emotional distress when they engaged in such conduct, which they knew not to be true and proper.

172.    The conduct of DEFENDANTS as herein alleged was outrageous and resulted in the infliction of severe physical injuries and severe emotional distress upon Plaintiffs.

173.    By reason or the wrongful and malicious acts of DEFENDANTS, and each of them, and of the severe emotional distress caused Plaintiffs. As a legal result of DEFENDANTS tortious conduct, PLAINTIFFS suffered physical and emotional distress, including, but not limited to, fright, nervousness, anxiety, worry, mortification, shock, humiliation, and indignity to an extent and in an amount subject to proof at trial.

174.    To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

175.    All INDIVIDUAL DEFENDANTS, and DOES 1 through 10, inclusive, knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive
///

damages for the purpose of punishing these INDIVIDUAL DEFENDANTS and to deter them and others from such conduct in the future.

## EIGHTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

### (By all PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10 )

176.    Plaintiffs incorporate, by reference herein, the allegation in the foregoing paragraphs as though fully set forth herein.

177.    Defendant DCFS is a department within San Bernardino County dedicated to protecting and promoting the wellbeing of abused, neglected, or exploited children. DCFS reviews allegations of child abuse and neglect made within San Bernardino County and provides intervention and support services to families and children when those allegations are sustained. As a result, DCFS placed N.M., a vulnerable child, in the unmonitored care of Guiffrida, who had a criminal history of violent outbursts.

178.    Because of N.M.'s young age and unique vulnerabilities as a traumatized youth, and because of the status of DEFENDANTS and their relationship with PLAINTIFFS, COSB, DCFS, GONZALEZ, FLORES, FONSECA and DODELE, and DOES 1 through 10, inclusive, had breached their fiduciary duty to Plaintiffs by engaging in the wrongful conduct described above and herein.

179.    As a direct result of the wrongful conduct alleged herein, PLAINTIFFS have suffered, among others, great pain of mind and body, shock, emotional distress, physical, cognitive, and behavioral manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered spiritually; was prevented from performing Plaintiffs daily activities and obtaining the full enjoyment of life; have sustained loss of future earning capacity; and/or has incurred expenses for medical and psychological treatment, therapy, and counseling.

180.    To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under

///

1   Government Code § 815.2; and its conduct is not immunized by Government Code §
2   820.1.

3       181.   All INDIVIDUAL DEFENDANTS, and DOES 1 through 10, inclusive,
4   knowingly and willfully acted with malice and oppression and with the intent to harm
5   Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive
6   damages for the purpose of punishing these INDIVIDUAL DEFENDANTS and to deter
7   them and others from such conduct in the future.

8                        **NINTH CAUSE OF ACTION**
9                             **NEGLIGENCE**
10      **(By All PLAINTIFFS Against all DEFENDANTS, DOES 1 through 10)**

11      182.   Plaintiffs incorporate, by reference, the allegations in the foregoing
12  paragraphs as though fully set forth herein.

13      183.   Upon Plaintiff being declared a dependent and placed into the care, custody
14  and control of COSB and DCFS, COSB and DCFS was entrusted with the custody,
15  supervision, care and control of the minor Plaintiff. Defendant COSB had the further
16  responsibility to select and place the Plaintiff with one or more care provider(s) it had
17  recruited, trained and approved. Defendant COSB selected and placed Plaintiff N.M. with
18  Samuel Guiffrida and later with Andrew Guiffrida.

19      184.   Plaintiffs relied upon COSB and DCFS to fulfill their duties, which
20  included the duty and responsibility to supervise the activities and conduct of other
21  residents and visitors of the home with respect to the minor Plaintiff. As a result of
22  Defendants' activities, and responsibilities, and Plaintiff's reliance thereon, a special
23  relationship was established between the Plaintiffs and COSB and DCFS. As a result of
24  the special relationship, Defendants, and each of them, had an affirmative duty to
25  supervise other residents and visitors of the home und a duty to come to the aid of
26  Plaintiff and to prevent abuse, neglect and/or mistreatment.

27      185.   Pursuant to Welfare and Institutions Code § 16519.5, COSB and DCFS had
28  a duty to safeguard the rights of Plaintiff, a duty to act as a reasonable and prudent parent

as described in Health and Safety Code § 1522.44, a duty to provide a family setting that promotes normal childhood experiences and serves the needs of the child. Defendants COSB and DCFS had a duty to ensure that Plaintiff was free from infliction or pain, humiliation or intimidation.

186.   Defendants' assumption of the duty to exercise supervision, care, control, and protection, Plaintiff was required to, and did, rely upon Defendants COSB, DCFS and the agents, entities and individuals to whom such duties were assigned or delegated, to provide for the supervision, care, control, protection and provision of N.M.'s health, safety, and well-being, thereby further establishing the existence of a special relationship between Plaintiff and said Defendants, and each of them.

187.   As herein alleged, Defendants breached duties established under their respective relationships, and/or by the statutes, rules, regulations and other enactments alleged herein, and/or under the terms and conditions of the contracts to provide services, or to provide care as a certified care provider.

188.   DEFENDANTS DCFS, GONZALEZ, FLORES, FONSECA and DODELE owed Plaintiffs a duty of care when they expressly became aware of the allegations of physical abuse, along with the evidence gathered by N.M.'s mother showing the ongoing physical and emotional abuse by N.M.'s father, Guiffrida. This abuse should have resulted in N.M.'s father losing all access to his son.

189.   Further, Defendants had a duty to supervise N.M. and make sure that he was not put in immediate physical danger.

190.   Further, Defendants DCFS, GONZALEZ, FLORES, FONSECA and DODELE are all mandated reporters pursuant to California Penal Code §11165.7.

191.   Pursuant to California Penal Code 11165.9, Defendants DCFS, GONZALEZ, FLORES, FONSECA and DODELE were mandated by law to report "suspected child abuse or neglect" to "any police department or sheriff's department, not including a school district police or security department, county probation department, if

///

designated by the county to receive mandated reports, or the county's welfare department." *See* California Penal Code § 11165.9.

192.   Defendants GONZALEZ, FLORES, FONSECA and DODELE breached their duties to N.M. and JAIMIE MANNS by failing to (1) report; (2) properly review; and (3) act on the complaints/information provided by JAIMIE MANNS to DCFS and the Dependency Court, that N.M. was being put in immediate physical danger.

193.   As an actual, proximate, legal, and foreseeable result of Defendant's conduct, N.M. suffered physical injury, and his guardian ad litem, JAIMIE MANNS, has suffered and continues to suffer significant injury, including, but not limited to, emotional distress and anxiety.

194.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

195.   All INDIVIDUAL DEFENDANTS, and DOES 1 through 10, inclusive, knowingly and willfully acted with malice and oppression and with the intent to harm Plaintiffs in a despicable manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Individual Defendants and to deter them and others from such conduct in the future.

## TENTH CAUSE OF ACTION
## BREACH OF DUTY OF CARE
## ARISING UNDER SPECIAL RELATIONSHIP
### (By PLAINTIFF N.M., by and through his guardian ad litem
### JAIMIE MANNS Against all DEFENDANTS, DOES 1 through 10)

196.   Plaintiffs incorporate, by reference, the allegations in the foregoing paragraphs as though fully set forth herein.

197.   A special relationship was established between COSB, DCFS and Plaintiff N.M. and similarly-situated minors, under which Defendants COSB owed Plaintiff N.M.

and similarly-situated dependent minors a duty of due care and a duty to protect Plaintiff
N.M. from foreseeable harm.

198.   COSB has primary jurisdiction and control of the COSB Children and
Family Services, which has primary jurisdiction over the placement, protection and care
of juvenile dependents of the COSB.

199.   Plaintiff alleges that Defendants COSB and DCFS maintain primary
jurisdiction, control, and responsibility for the health, safety, protection, and wellbeing of
juvenile dependents, which is co-existent with the entities and individuals to which it
delegates authority.

200.   As a result, COSB and DCFS therefore at all times retain primary
jurisdiction, control, and responsibility for insuring the health, safety, protection and
wellbeing of minor dependents.

201.   Defendant COSB and DCFS has primary jurisdiction and a continuing
responsibility to investigate the background, history and qualifications of all persons who
provide minor dependent care, to insure the health, safety, wellbeing and protection of
placed dependent minors. Plaintiff reasonably relied on COSB and DCFS to perform its
continuing duty to insure the qualifications of persons providing care to dependent
minors.

202.   Minor Plaintiff N.M. was a dependent minor of the San Bernardino Juvenile
Court and was in the custody, supervision, care and control of Defendant  COSB and
DCFS who was providing care, supervision and control of the minor's health, welfare,
safety and care. Plaintiff and similarly-situated minors, under which Defendant COSB
and DCFS owed Plaintiff and similarly-situated dependent minors a duty of due care and
a duty to protect plaintiff from foreseeable harm.

203.   Plaintiff therefore relied upon COSB to perform oversight, quality of care
inspections, and other duties upon the Department of Children and Family Services
and/or providers and agencies with whom it delegates or contracts, to provide such
supervision and control over Plaintiffs' health, welfare, safety and care, and as a result a

special relationship was thereby established between the Plaintiff and Defendant COSB
and DCFS.

204.   Upon Plaintiff being declared a dependent of the County of San Bernardino
Juvenile Court and placed into the care, custody and control of the DCFS the COSB and
DCFS was entrusted with the custody, supervision, care and control of the minor
Plaintiff, Defendant COSB had the further responsibility to select and place the Plaintiff
with one or more care providers it had recruited, trained and approved.  COSB had the
responsibility to protect Plaintiff from foreseeable injury, harm and violation of his
personal rights while in their care and to ensure the welfare, health and safety of the
minor.

205.   As a result, the Plaintiff relied upon Defendants to fulfill their duties and
responsibilities, and a special relationship was thereby established between Plaintiff and
Defendants. Defendants knew or should have known that the placement of N.M..
presented an environment where it was foreseeable that Plaintiff would be subjected to
neglect and/or abuse.

206.   Despite this continuing constructive and actual notice of the
inappropriateness of the placement of N.M., Defendant COSB, DCFS and the
INDIVIDUAL DEFENDANTS allowed the inappropriate placement to be maintained.

207.   Despite the existence of the special relationship between Plaintiff and
Defendants, and each of them, Defendants breached the duty of due care under the
special relationship while in the scope of their agency or employment, by failing and
neglecting to fulfill or perform their respective duties to control, monitor, care for and to
protect the health,  safety and well-being of Plaintiff and other dependent minors while
their care subject to the COSB and DCFS jurisdiction and control. Government Code §
820 provides that an employee of a public entity is liable for his or her acts or omissions
to the same extent as a private person, and under Government Code § 815 the public
entity that employs the individual is vicariously liable for the torts of its employee
committed in the scope of employment.

208.   As a proximate result of the breach or duty of due care under the respective special relationships created and existing between Plaintiff and Defendants, Plaintiff suffered injuries and damages as alleged herein. Plaintiff suffered physical and/or psychological abuse, neglect, and mistreatment, which was reasonably obvious and could, should or would, have been discovered in the exercise of due care including, but not limited to, by investigating reports of suspected abuse, by conducting in-person interviews outside the presence of the caregiver, by interviewing the caregiver as to observed or suspected abuse of Plaintiff and by other established methods and procedures for the supervision, care and oversight of dependent minors.

209.   Plaintiff further alleges that Defendants, and each of them, failed and neglected to establish and implement policies and procedures to insure the health, safety and well-being of Plaintiff and other minors, including, but not limited to, the failure to develop and institute policies and procedures for conducting periodic examinations, in person interviews and other methods designed to discover and prevent physical, psychological and unlawful physical and/or psychological abuse, neglect and mistreatment of minor dependents including Plaintiff.

210.   Had Defendants, and each of them, not breached their respective duties of due care under their special relationships, they could, should, or would have discovered evidence of neglect and mistreatment, or of the unfitness and neglect of his caregivers and taken measures to protect or remove the Plaintiff from an unsafe placement.

211.   To the extent not separately responsible, Defendants COSB and DCFS are vicariously responsible for these INDIVIDUAL DEFENDANTS' conduct under Government Code § 815.2; and its conduct is not immunized by Government Code § 820.1.

212.   As a proximate result of the acts and omissions of Defendants, and each of them, Plaintiff sustained general and special damages as alleged herein, in amounts within the jurisdictional limits of this court according to proof at trial.

///

1

## **PRAYER FOR RELIEF**

Wherefore, PLAINTIFF JAIMIE MANNS, individually and as guardian ad litem

to PLAINTIFF N.M., pray for judgment against Defendants COUNTY OF SAN

BERNARDINO, SAN BERNARDINO COUNTY CHILD AND FAMILY SERVICES,

ALEJANDRA GONZALEZ, MALLORY FLORES, KRISTINA DODELE, MEGAN

FONSECA, and DOES 1 through 10, inclusive, as follows:

      1.     For general damages, the exact amount of which will be proven at trial;

      2.     For special damages for medical and related expenses according to proof;

      3.     For punitive damages against the INDIVIDUAL DEFENDANTS;

      4.     For statutory damages as permitted by law;

      5.     For reasonable attorneys' fees;

      6.     For interest;

      7.     For costs of suit incurred herein;

      8.     For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

                                    SKAPIK LAW GROUP

Dated: December 9, 2021              By: _Geralyn L. Skapik_

                                 Mark J. Skapik
                                 Geralyn L. Skapik
                                 Blair J. Berkley
                                 Matthew T. Falkenstein
                                 Attorneys for Plaintiffs,
                                 JAIMIE MANNS and
                                 N.M., by and through his
                                 guardian ad litem JAIMIE
                                 MANNS

1

## **JURY TRIAL DEMANDED**

2

3          Plaintiffs hereby demand a jury trial.

4

5   Respectfully Submitted,

6   Dated: December 9, 2021                    By:    [signature]

7                                                     Mark J. Skapik

8                                                     Geralyn L. Skapik
                                                      Blair J. Berkley
9                                                     Matthew T. Falkenstein
                                                      Attorneys for Plaintiffs,
10                                                    JAIMIE MANNS and
                                                      N.M., by and through his
11                                                    guardian ad litem JAIMIE
                                                      MANNS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28